UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LESTER LESAVOY, et al.,

    Plaintiffs,

    v.

JP MORGAN CHASE BANK, N.A.,

    Defendant.

    _____/

No. C 14-2226 PJH

**ORDER GRANTING MOTION TO DISMISS**

Before the court is defendant JP Morgan Chase Bank's motion to dismiss plaintiffs' second amended complaint ("SAC"). The court finds the matter suitable for disposition without a hearing, and hereby rules as follows.

## BACKGROUND

This mortgage case arises out of plaintiffs' attempts to obtain a loan modification. Plaintiffs Lester and Linda Lesavoy ("plaintiffs") allege that they purchased their home in January 2006, became unable to pay their mortgage, and defaulted in November 2008. See SAC, ¶¶ 13, 15. Later that same month, plaintiffs submitted a loan modification application to defendant JP Morgan Chase Bank, N.A. ("defendant" or "Chase"). Id., ¶ 16. Chase confirmed that all documents had been received, and told plaintiffs to contact Chase every four to six weeks for updates on their application. Id.

Over the course of the next few months, plaintiffs were asked to re-submit their modification application documents on multiple occasions. SAC, ¶¶ 19, 21. In August 2009, plaintiffs filed for bankruptcy. Id., ¶ 24. After the bankruptcy, plaintiffs were again repeatedly asked to re-submit their modification application documents. SAC, ¶¶ 25, 30, 36, 42, 43, 47.

In August 2011, Chase informed plaintiffs that their loan modification application was denied. SAC, ¶ 49. Plaintiffs then hired an attorney, and re-applied for a loan modification

on September 13, 2011. Id., ¶ 50. Just over two weeks later, plaintiffs were told that they were ineligible for a modification. Id., ¶ 52. Plaintiffs admit that they did not re-apply for a modification at that time, but a Chase customer service specialist continued to communicate with them, and in February 2012, plaintiffs were told that their file was being processed and no additional documents were needed. Id., ¶¶ 53, 55. Plaintiffs were asked for updated documents in September 2012, but were told that no additional documents were needed in November 2012 and in January 2013. Id., ¶¶ 59-61, 63. In April 2013, plaintiffs were again asked to update their documents, and on April 23, 2013, plaintiffs' modification application was denied. Id., ¶¶ 66-67.

After the April 2013 denial, plaintiffs were told that they could re-apply for a modification if they had a change in financial circumstances. SAC, ¶ 68. Because Mr. Lesavoy had recently received a pay raise, plaintiffs did indeed re-apply for a modification in August 2013. Id., ¶¶ 68, 70. In January 2014, Chase told plaintiffs that their application was complete, and in February 2014, plaintiffs' application was denied. Id., ¶¶ 74-75.

In the February 2014 denial letter, Chase stated that plaintiffs' home was valued at $1,300,000, which rendered it ineligible for a loan modification. SAC, ¶ 75. Plaintiffs insist that the actual value of their home is $1,050,000, and that Chase "recklessly, if not purposefully, valu[ed] the Lesavoys' property at an artificial amount that disqualified the Lesavoys for loan modification." Id., ¶ 78. Plaintiffs also attach to their complaint a declaration from a former Chase employee, stating that Chase would routinely close out applications to modify loans exceeding $1 million, just to "clear up the backlog," without actually reviewing the applications. Id., ¶ 81.

Plaintiffs filed suit against Chase in state court on April 7, 2014, and the case was removed to this court on May 14, 2014. Plaintiffs filed a first amended complaint after removal, which was dismissed with leave to amend on November 12, 2014. The court found that the FAC did "not adequately explain the facts surrounding their loan modification applications and does not adequately explain which facts underlie each asserted cause of action," and ordered plaintiffs to "explain which transactions give rise to each asserted

2

cause of action." Plaintiffs were specifically instructed to "set forth (1) the number of loan modification applications submitted to defendant, (2) the dates on which the loan modification applications were submitted, (3) whether plaintiffs received a response to each application, and if so, what the response was, and (4) which loan modification applications allegedly defendant mishandled and how it mishandled them." See Dkt. 36.

Plaintiffs filed the operative SAC on December 3, 2014, asserting three causes of action: (1) negligence, (2) violation of the Equal Credit Opportunity Act ("ECOA"), which requires a creditor to notify an applicant of its action on a credit application within 30 days, and (3) violation of California Business & Professions Code § 17200. The negligence claim appears to be based on all conduct alleged in the SAC, but the ECOA claim is expressly limited to the three loan modification applications submitted in May 2011, September 2011, and August 2013. Chase now moves to dismiss all three claims.

**DISCUSSION**

A.   Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

B.  Legal Analysis

As an initial matter, the court notes that the SAC does comply with the court's previous order to specifically set forth the facts surrounding their loan modification applications and Chase's alleged mishandling of those applications. The newly-pled facts allow the court to address defendant's arguments on the merits, starting with its argument that the entire SAC is barred by the doctrine of judicial estoppel, based on plaintiffs' failure to disclose their claims against Chase during their bankruptcy proceedings.

Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. Shokohi v. JP Morgan Chase Bank, 2011 WL 5412933 at *2 (N.D. Cal. Nov. 8, 2011) (citing Hamilton v. State Farm Fire & Cas. Ins. Co., 270 F.3d 778, 782 (9th Cir.2001)). However, judicial estoppel applies only "when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy." Hamilton, 270 F.3d at 784.

Chase argues that, because plaintiffs began applying for loan modifications in 2008, and continued to submit documents through 2011 (and beyond), they necessarily "knew of

1  the facts giving rise to their claims – that is, that Chase was 'mishandling' their application –
2  for the duration of their bankruptcy proceedings from August 2009 through July 2011." Dkt.
3  41 at 5.  Chase further argues that "the fact that the conduct allegedly continued after their
4  bankruptcy proceedings ended does not absolve plaintiffs of their responsibility to disclose
5  their claims on their bankruptcy schedules." Id.

6  The court rejects both of these arguments.  Starting with the second argument, the
7  court finds no basis for the contention that conduct occurring <u>after</u> the close of bankruptcy
8  proceedings is subject to judicial estoppel.  During bankruptcy, plaintiffs obviously could not
9  have had knowledge of facts that had not yet occurred.

10  As to plaintiffs' allegations that Chase "mishandled" their modification applications
11  between 2008 and 2011 (i.e., before and during bankruptcy proceedings), plaintiffs
12  maintain that those allegations are based on information obtained from a former Chase
13  employee (Melody Simpson), who did not inform them of the alleged mishandling until after
14  her employment ended in 2012.  Thus, during the pendency of bankruptcy proceedings,
15  plaintiffs had no knowledge that Chase was allegedly "mishandling" their loan modification
16  applications.  While plaintiffs did have knowledge that Chase had failed to respond within
17  30 days of their November 2008 modification application, that alleged failure to respond is
18  not pled as part of plaintiffs' ECOA claim, and thus, Chase's judicial estoppel argument is
19  inapplicable to that specific conduct.

20  Thus, the court finds that judicial estoppel does not bar any of the SAC's claims or
21  allegations.  To the extent that the SAC is based on conduct that occurred before or during
22  plaintiffs' bankruptcy proceedings, that conduct was not known to plaintiffs at the time of
23  their bankruptcy.  Accordingly, the court will reach the next issue raised by Chase's motion
24  – whether the SAC fails to state a claim.

25  Plaintiffs' first cause of action is for negligence, and arises out of Chase's alleged
26  "fail[ure] to properly process plaintiffs' application by underwriting the file, and properly
27  appraising the file."  SAC, ¶ 90.

28  The elements of a cause of action for negligence are (1) a legal duty to use

5

reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury. Mendoza v. City of L.A., 66 Cal. App. 4th 1333, 1339 (1998). "The threshold element of a cause of action for negligence is the existence of a duty to use due care." Paz v. State of Cal., 22 Cal. 4th 550, 559 (2000) (citing Bily v. Young & Co., 3 Cal. 4th 370, 397 (1992)). Whether a duty of care exists is a question of law. Avila v. Citrus Cmty. College Dist., 38 Cal. 4th 148, 161 (2006).

Under California law, financial institutions (including lenders and servicers) generally owe no legal duty of care to borrowers. See Nymark v. Heart Fed. Sav. & Loan Assoc., 231 Cal. App. 3d 1089, 1096 (1991) (lender owes no duty of care to borrower in underwriting loan, or in appraising collateral for loan); Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) (lender has no duty of care in approving loans for and lending money to inexperienced borrowers, even for risky ventures). Similarly, a loan servicer owes no duty of care to the borrower in servicing the loan, including loan modification and workout discussions and foreclosure. Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 67-68 (2013).

While some courts have held that a financial institution does owe a duty of care in the context of a loan modification, the "vast majority of courts in this district have found that merely engaging in the loan modification process is a traditional money lending activity," and thus does not trigger any duty of care. See, e.g., Meyer v. Wells Fargo Bank, N.A., 2013 WL 6407516 at *5 (N.D. Cal. Dec. 6, 2013) (collecting cases). This court takes the majority view, and finds that plaintiffs were not owed a duty of care from Chase with regard to their loan modification applications. Thus, plaintiffs' first cause of action is DISMISSED without leave to amend.

Plaintiffs' second cause of action, for ECOA violations, is based on Chase's alleged failure to respond, within 30 days, to loan modification applications submitted in May 2011, September 2011, and August 2013. SAC, ¶ 104.

Chase first argues that, in each instance, it provided a decision to plaintiffs within 30 days of notifying them that their application was complete. For example, regarding the

August 2013 modification application, Chase argues that it "did not tell [plaintiffs] that their application was complete until January 13, 2014," and because "Chase sent the denial letter on February 11, 2014," it was within the 30 day statutory period.

However, the ECOA requires a response "[w]ithin thirty days . . . after <u>receipt</u> of a completed application for credit," not thirty days after a creditor chooses to acknowledge receipt of a completed application. Chase's interpretation of the statute would allow creditors to evade the 30-day window by simply delaying their acknowledgment of completed applications.

Chase then argues that the relevant portion of the statute does not apply to plaintiffs, because they were in default at the time that they submitted their modification applications. However, Chase's argument relies on a misreading of the statute. Section 1691(d)(1) of the ECOA requires that "[w]ithin thirty days (or such longer reasonable time as specified in regulations of the Bureau for any class of credit transaction) after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." Section 1691(d)(2), a separate provision, provides that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." The statute clarifies that "the term 'adverse action' means a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement <u>where the applicant is delinquent or otherwise in default</u>, or where such additional credit would exceed a previously established credit limit." (emphasis added). Thus, the carve-out for defaulting borrowers applies only to the part of the statute that sets forth requirements for "adverse actions," and does not affect the part of the statute that simply requires action within 30 days.

Chase does interpret the statute correctly in a footnote on page 15 of its opening motion (acknowledging that "the requirement that Chase provide notice of <u>any</u> action may apply regardless of whether the loan is in default"); however, Chase incorrectly

7

interprets the SAC as being based on the allegation "that Chase did not timely notify them of its <u>adverse</u> action, and not that it failed to notify them of <u>any</u> action." (emphasis in original). Paragraph 104 of the SAC specifically alleges that "Chase failed to notify plaintiffs of <u>any action</u> within thirty days of its receipt of their complete loan modification application." (emphasis added). In short, the fact that plaintiffs were in default does not prevent them from asserting a claim under section 1691(d) of the ECOA.

However, plaintiffs' default is relevant to the allegation of damages. Plaintiffs allege damages in the form of harm to their credit reputation and mental anguish, but they fail to tie those damages to defendant's alleged failure to act on their modification applications. Instead, any damages appear to be the result of plaintiffs' own default. Plaintiffs have not provided any authority for their argument that the type of damages that they have alleged are sufficient under ECOA. Accordingly, the court finds that plaintiffs have failed to plead damages, and thus, the second cause of action is DISMISSED without leave to amend.

Plaintiffs' third cause of action, for violation of section 17200 of California's Business and Professions Code, is based on both the alleged mishandling of their loan modification applications and the alleged failure to timely respond to those applications.

Section 17200, also referred to as the "Unfair Competition Law" (or "UCL"), prohibits any "unlawful, unfair, or fraudulent business act or practice." In their opposition brief, plaintiffs clarified that they are proceeding under the "unfair" and "unlawful" prongs.

A plaintiff seeking to assert a UCL claim must meet the statute's requirements for standing, which are that they (1) have suffered an "injury in fact," and (2) "lost money or property." See <u>Kwikset Corp. v. Superior Court</u>, 51 Cal.4th 310, 322 (2011).

As discussed above, in the context of plaintiffs' ECOA claim, plaintiffs have not adequately alleged that they suffered damages as a result of Chase's alleged conduct. While plaintiffs allege that they suffered "increased home debt, attorneys' fees, [and] damaged credit score," those damages appear to be the result of plaintiffs' own default, rather than the result of Chase's alleged misconduct. Thus, the court finds that plaintiffs have failed to demonstrate standing under the UCL, and as a result, the third cause of

action is DISMISSED without leave to amend. The court further finds that, to the extent that plaintiffs allege a violation of the "unlawful" prong of the UCL, that allegation is undermined by the dismissal of plaintiffs' first two claims.

## CONCLUSION

For the foregoing reasons, plaintiffs' second amended complaint is DISMISSED without leave to amend. The February 11, 2015 hearing date on defendant's motion is VACATED.

**IT IS SO ORDERED.**

Dated: February 9, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge